The People of Puerto Rico, Plaintiff and Appellee, *v.* Valentín Rodríguez Martínez, Defendant and Appellant.

No. 10047. Argued June 8, 1943.—Decided June 18, 1943.

*Luis Mercader* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

The appellant was charged with murder in the second degree, convicted of voluntary manslaughter and sentenced to 14 years in the penitentiary.

He bases his appeal on three assignments of error, which we set forth and examine in the order they are found in his brief.

■ That the theory of the charge of murder was changed to voluntary manslaugther, without authority for such amendment from the court and without notification thereof to the defendant.

This assignment finds no support in the record before us. There does not appear therein any statement of any theory, either by the district attorney or by the defense. The district attorney proceeded to present the evidence he had available in order to sustain the charge of murder in the second degree, without making any statement as to the theory he proposed to sustain. The defense presented its testimony which tended to establish the theory of self-defense. The jury, having heard the proof of both parties and the instructions of the court, returned a verdict of voluntary manslaughter. There is therefore nothing of which the defendant can complain. In addition, the district attorney is authorized to modify his informations, reducing the grade of the crime originally charged in the information, without any necessity of amending it or of obtaining previously the permission of the court therefor. This practice can in no way prejudice a defendant, since if the latter had a good and sufficient defense against the charge of murder, that same defense could be interposed against any other inferior characterization of the same facts imputed to him in the original information.

█ 2. That during the hearing of the case the district attorney and the court made certain prejudicial statements, casting doubt, before the jury, on the innocence of the defendant.

(1) Dolores Martínez, the first witness for the government, testified that she did not see who killed Teodoro Nieves because "I was in the center of the house and I cannot testify as to what I did not see." Then the district attorney intervened, saying: "That is the story you are telling and I want you to answer my question. You speak to me of a dead man. Who was the dead man?" The witness answered: "Teodoro Nieves." The district attorney asked: "Who killed him?" And the witness again repeated: "I did not see who killed him because I was in the center of the house."

The record does not show that the defense made any objection to the said question. Besides we do not believe that the defendant suffered any prejudice thereby, since the witness said nothing that could serve to connect him with the death of Nieves.

■(2) The appellant, although he took no objection or exception thereto, complains of the following incident:

Sergio Rivera Vélez, witness for the government, had testified that he saw Teodoro Nieves, who was running and came from behind the defendant; that the defendant grabbed an iron bar and struck Nieves and then the latter threw stones at the defendant; that after being hurt, Nieves began to run and the defendant went after him, both of them going through the door of the house of Dolores Martínez and through the door of the kitchen; that as they were going out, Nieves was bleeding and fell down, and when they went to look for him in order to take him to the hospital he had already died. The district attorney then continued to examine the witness in the following form:

"Q. Did you see when the defendant knifed him?—I saw it when he first wounded him, a little bit in the arm.

"Q. Did you so swear under oath before the district attorney?— Yes, sir.

"Judge: He is obliged to tell the truth. If he testified to the truth formerly he has to testify to that truth here.

"Q. Did you see when he knifed him?—Yes, when he wounded him."

We do not find that the court committed any error in the preceding examination. The fundamental purpose of a trial is to establish the truth. It is the judge who presides over the hearing who is called on to direct and to control the presentation of the testimony and to prevent a witness from knowingly violating his oath to tell the truth. The exhortation to the witness to tell the truth and to recall his testimony rendered in the investigation, in no way could prejudice the defendant, since, notwithstanding the intervention of the

judge and of the district attorney, the witness reaffirmed his testimony that he was present only when the defendant wounded the deceased in the arm.

 3. That the evidence introduced by the district attorney is not sufficient to justify the verdict; and that the evidence as a whole demonstrates that the defendant acted in self-defense.

We have carefully read the proof of both parties. The proof of the government tended to show that after the first encounter between the defendant and the deceased, the latter, who had already suffered a knife wound in the right forearm, threw two rocks at the defendant and began to run, being followed by the defendant, who was carrying a knife. They both went through the door of the house of Dolores Martínez and went out through her kitchen door, Teodoro Nieves being mortally wounded. The autopsy revealed that the deceased had received a wound in the hypochondriac left region at the level of the eighth intercostal space affecting the stomach and the heart, the wound being necessarily mortal; another wound in the umbilical region of a minor character; and another simple and superficial wound in the forearm.

The defense witness, Milagros Martínez, confined herself to testifying with reference to the beginning of the quarrel between the defendant and his victim. She knew nothing of what occurred later since, according to her, she became nervous, began to yell and ran into the house and saw no more.

The defendant testified that on finding himself in the presence of Nieves, the latter insulted him and hit him in the face; that then they fought; that for more than a year Nieves had been angry with him and that whenever they met he was forced to fight him; that some people intervened, separated them and took Nieves away; that the latter leaped and ran toward him and began to fight again; that these people separated them a second time and then Nieves threw

two stones at him, one of them hitting him below the right arm; that they again fought, and then he took from Nieves by force a weapon that the latter was carrying in his chest and wounded him with it; that then he ran to find the girls, and on arriving home he discovered that Nieves had died; that he did not try to kill him; that he wounded him in front and in the fight, in order to get rid of him, since Nieves was stronger than he and had dominated him.

The conflict resulting from all the testimony was resolved by the jury against the defendant. The jury obviously believed the witnesses of the government and came to the conclusion that the defendant had killed his adversary after the latter had withdrawn, fleeing from the place where the fight occurred. This conclusion being sustained by testimony which we consider sufficient, interference by us with the discretion which the law concedes to the jury as the only judges of the facts would not be justified.

The judgment appealed from must be affirmed.